1    eau0haic                    Conference

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    HAIR FLAIR LIMITED,

5              Plaintiff,

6         v.                              14 CV 04508

7    AMAZON.COM, INC.,

8              Defendant.

9    ------------------------------x
                                    New York, N.Y.
10                                  October 30, 2014
                                    2:30 p.m.
11
     Before:
12
                    HON. KATHERINE POLK FAILLA,
13
                                    District Judge
14
                         APPEARANCES
15
     CARTER LEDYARD & MILBURN,LLP
16        Attorneys for Plaintiff
     BY:  JOHN MICHAEL GRIEM  ROSE AUSLANDER
17
     KLARQUIST SPARKMAN, LLP
18        Attorneys for Defendant
     BY:  ROBERT TODD CRUZEN
19

20

21

22

23

24

25

1          (Case called; in open court)

2          THE COURT:  All right.  In part we are here for an

3     initial pretrial conference, but in part this is supplanting

4     that conference, because there have been some discussions about

5     the possibility of a motion.  And there also is some dispute

6     about some of the specifics of discovery in this case.

7          So let me speak, first, to Mr. Cruzen.  Will you be

8     taking the laboring oar here, sir?

9          MR. GRIEM:  I will.

10          THE COURT:  And I have read the papers in the case,

11     and I have read the parties' submissions and proposed case

12     management plan.  If there is something in particular you would

13     like to direct my attention to about this case, I would be

14     happy to hear it now.

15          MR. GRIEM:  Yes, your Honor.  I think our primary

16     request at this conference is that the Court add to the case

17     management plan, an order that the parties participate in a

18     very early Court adjunct mediation before one of the

19     magistrates here in Southern District.

20          THE COURT:  Sir, I'm going stop you for just a moment,

21     because you're saying two things, and I want to make sure I

22     have them clear in my mind.

23          There is a court-sponsored mediation program involving

24     mediators, some of whom have specialization in intellectual

25     property issues.  There is, separate from that, the magistrate

1    judges.  And there is one to whom this case has been assigned.

2            So which were you contemplating?

3            MR. GRIEM:  Before the magistrate.  Not the

4    intellectual-property specific one.

5            THE COURT:  All right, thank you.  Please continue,

6    sir.

7            MR. GRIEM:  So, if I can provide just five minutes of

8    background, I think it will help --

9            THE COURT:  Yes.

10           MR. GRIEM:  -- in whether you exercise your discretion

11   to add this to the case management plan.

12           Hair Flair, my client, the plaintiff, contacted Amazon

13   over a year ago, bringing to its attention the presence of

14   numerous infringing goods on the website.  Hair Flair makes a

15   hair curler product and, over time, noticed a number of

16   infringing products, copies, knockoffs of a sort, made in China

17   that were being offered through Amazon.com.

18           So Amazon responded by asking that we contact these

19   sellers directly, which we did.  We, then, not receiving any

20   positive response from these infringers, contacted Amazon again

21   asking that they be delisted.  We received no response to that

22   communication.  So the client, ultimately, decided to bring

23   suit in this Court in order to resolve this very important

24   business issue for them.  They have measured a significant loss

25   in sales as a result of the presence of infringing goods on

1    Amazon.com.  They have contacted other on-line sellers, and

2    those sellers have agreed to cooperate and take down infringing

3    goods.

4           So we would like to have the Court order that, within

5    60 days, that the plaintiff and the defendant bring clients,

6    with authority, here to New York to appear before a magistrate

7    in the Southern District.  And that within 30 days, that the

8    plaintiff provide a very limited amount of discovery about the

9    sales that have been made of the infringing products.  And to

10   be clear, we provided a long spreadsheet that identifies those

11   products that we were aware of in April.  And, also,

12   information about what profits or fees Amazon has received from

13   those sales.

14          The parties have already exchanged settlement

15   discussions, so I believe that this case is ripe for settlement

16   if the parties are given the help of the magistrate in focusing

17   their clients and their lawyers on trying to resolve this now,

18   before we engage in a long and lengthy process of claim

19   construction about a product that Amazon doesn't make or sell.

20          THE COURT:  Okay.  All right, is there anything else

21   you want to add before I talk to Mr. Cruzen.  Because this is

22   the thing that you wanted me to add to the case management

23   plan.  If there is something else you want me to be focused on

24   when I start questioning him, I would like to know.

25          MR. GRIEM:  Okay.  No, I don't think I have anything

1   to add to the settlement discussion.

2          THE COURT:  You know, sir, while I have you standing,

3   then, let me ask you something.

4          MR. GRIEM:  Sure.

5          THE COURT:  You have seen reference to the possibility

6   of the defendant making a motion to transfer the case to

7   Washington, which has been identified, for me, as more

8   convenient for them.  And I have no doubt.  This is a situation

9   in which I know you folks are in New York, but your client is

10  based in the UK, and there is at least one witness in Northern

11  Ireland.  And I did not know what your bases were, or your

12  thoughts were about that application and about why this case

13  should remain in this district.

14         MR. GRIEM:  Well, I think this case should remain in

15  this district because it is the most convenient location for

16  the clients, one of which is in England, and one of which is in

17  Seattle, to resolve this dispute.

18         While it is true that Hair Flair has no employees

19  here, they would be considerably inconvenienced if they had to

20  fly all of the way to Seattle to handle this case.  This case

21  will involve primarily electronic documents or discovery, so I

22  don't think that the location of documents is particularly

23  relevant.  Witnesses will have to travel the same amount of

24  distance if they come here to New York.  Amazon's a nationwide

25  company.  They have purposely directed their activities to this

```
 1    district.  They admit personal jurisdiction and that venue is
 2    proper.
 3            So I think given the experience that this Court has
 4    with IP cases, given the fact that we have now begun this case,
 5    I think it would be a disservice, certainly to Hair Flair, and
 6    not in keeping with the rules governing transfer for
 7    convenience, to put my client, a small UK company, to the
 8    further inconvenience of having to go to Seattle, when this
 9    case might not have even been brought if we had gotten a
10    response from Amazon's Legal Department in April of this year.
11            THE COURT:  I'm not sure that later point is something
12    I can consider in the factors.  So let me think about the
13    things I can consider.
14            I thought I saw reference in the papers to the
15    possibility of a dispute brewing regarding the production or
16    not of Hair Flair's representatives in the United States for
17    deposition.  So by telling me that New York is more convenient
18    than Seattle, are you also telling me that there will be no
19    issue and no dispute about producing them in New York for
20    deposition?
21            MR. GRIEM:  Well, I mean our client recognizes that by
22    taking advantage of the New York courts, it is willing to come
23    to New York for the trial.  And if the Court is inclined to
24    keep this case, I think I can persuade my client to come here.
25    We were not in a position, at the time we filed these papers,
```

1    to commit to that until we understood some of the other

2    scheduling and the resolution of the other issues that are

3    raised.

4                THE COURT:  So that's a yes.

5                MR. GRIEM:  It's qualified yes, your Honor.

6                THE COURT:  I want to understand the qualification.

7                MR. GRIEM:  Well, our client would agree to come to

8    the United States, voluntarily, if the case is transferred to

9    Seattle.

10               THE COURT:  Okay.  All right, I understand that.

11               Let me talk to Mr. Cruzen for a little bit, thank you.

12               THE COURT:  Sir, we can begin with the motion if you

13   want to, or we can begin with the discussion about mediation or

14   settlement discussion.

15               MR. CRUZEN:  I have no -- excuse me, I have no

16   preference.  But I'll start with the motion, if that is the

17   most convenient, since that was the last thing discussed.

18               I didn't hear any suggestion that there is any

19   witnesses, or evidence, relevant to this case that is within

20   this district.

21               THE COURT:  Although, in theory, sir, if we're talking

22   about likelihood of confusion, you could find some New York

23   purchaser of the curlers that are claimed to be infringing, and

24   have that.  I mean I can dust one off for you, if we need one.

25               MR. CRUZEN:  Well, I think that would be true within

1    any district of the United States, your Honor, presumably if

2    there were such confusion that you could find a witness

3    anywhere where these items were sold, and they are sold

4    nationwide by third parties, as I think the papers reflect.

5            It may be true the flight is perhaps two hours longer

6    from London to Seattle, compared to London to New York.  And

7    we're prepared to submit flight time information in connection

8    with our motion to try and substantiate that, your Honor.  We

9    don't think that the added two hours of inconvenience for Hair

10   Flair witnesses counterbalances Amazon witnesses having to come

11   all of the way across the country, when they would not have to

12   travel, at all.  And we think that is the relevant question,

13   not whether there is a meeting point between the two locations.

14   And we're prepared to submit case law on that issue, as well,

15   your Honor.

16           So it's our view that Seattle really is the proper

17   forum for this case.  The most convenient, on balance, for all

18   of the witnesses.

19           You also heard Mr. Griem, I think, refer to the fact

20   that third-party sellers manufacture these products in China.

21   The west coast location would be more convenient for those

22   witnesses, if they become relevant to the case.  I think the

23   plaintiffs own products are manufactured in China, at least

24   according to the information on its boxes.  If any of that

25   evidence becomes relevant, a west coast location would be more

1    convenient, as well.

2            So our view is it's really a straightforward analysis.

3    There are other cases decided in this district where there is a

4    foreign defendant and US corporation on the west coast.  We

5    think they are directly on point and prepared to submit them

6    with our papers.

7            THE COURT:  Okay.  But you do understand that if I

8    were to agree with you -- and I obviously am taking no position

9    now, because I have seen no papers -- you will buy yourself a

10   rather substantial fight about where certain depositions of

11   plaintiff representatives will be taking place.

12           MR. CRUZEN:  Understood, your Honor.  And it's our

13   belief that it's the proper thing for a plaintiff, alien itself

14   to the United States courts, to appear in the United States for

15   depositions, at least as to 30(b)(6) depositions, and as to

16   depositions of officers, board members, owners, things like

17   that.  We think it is proper that they would come here for

18   deposition.  It may be the case that we have a fight over that.

19   I suppose Amazon is bullish of its chances of prevailing if

20   that discovery battle comes before a court, or this Court, or a

21   court in Seattle.  But I don't think Amazon is inclined to

22   negotiate away any motion of transfer of venue merely to buy

23   something that we think plaintiff should be doing by default.

24   In any case, it is filed in the United States.

25           THE COURT:  Let's then turn to the first discussion I

1    had with Mr. Griem.  And I am of the belief that, if you will,

2    that it takes two to tango.  So if a party tells me, off the

3    bat, that there will be no productive settlement discussion at

4    this time, then I have to at least give very serious

5    consideration to that.  But what I would like you to do, sir,

6    is to talk about that issue.  And also talk about what Mr.

7    Griem was telling me, about the preliminary discussions leading

8    up to this lawsuit.

9           I would like to understand, because this is not

10    something with which I have the most experience, how Amazon has

11    dealt with losses of this type.  Because this cannot have been

12    the first one.  And so is it typically the case that the

13    company examines the -- sort of speaks to the patent itself?

14           MR. CRUZEN:  Yes, your Honor.  Once a lawsuit is

15    filed, I think Amazon has to avail itself of the substantive

16    defenses at issue in the case.

17           THE COURT:  Let me ask a better question.  I'm not

18    saying that this is the first lawsuit that Amazon has received

19    in this regard, but I won't tell you that there is a tremendous

20    body of case law, certainly not in this district, and I'm not

21    even thinking nationwide.  But let me understand how Amazon

22    approaches cases in which it is not the manufacturer of the

23    product, but it is providing an opportunity, a marketplace as

24    it were, on its website for products of this type that are

25    alleged to be infringing, either trademark or patent, to be

1    sold.

2          MR. CRUZEN:  So, I think the answer to that question,

3    your Honor, is that as Mr. Griem referred to in his

4    presentation, Amazon directs the party complaining of

5    infringement, whether under trademark law or patent law, to

6    pursue its claims against the manufacturer or the third-party

7    seller directly, and seek compensation in that manner.

8          In this case, I think Hair Flair actually has patents

9    in China.  I have no indication that they have actually pursued

10   any patent infringement suit against these manufacturers, which

11   are alleged to all be in China, using Hair Flair's Chinese

12   patents.  We think that is a much more suitable approach for

13   patent infringement cases, when Amazon is not retailing the

14   product, cases like this one, where third parties not only

15   manufacture the product, but it is third parties who are

16   selling the products, using the Amazon platform.

17         It is Amazon's view that no patent infringement claim

18   could be stated against Amazon, because it never has title to

19   the product.  Amazon is not selling the product.  It's third

20   parties who are selling the product.  So, you know, I think

21   Amazon's approach depends upon the facts in this case.

22         In this case, we think the plaintiff's claims are most

23   properly pursued against third parties who are offering for

24   sale and selling the product on line.  And so we really think

25   that these claims should be addressed to the third-party

1    manufacturer or sellers, rather than Amazon.

2            And now that Amazon has been sued, it will defend on

3    the merits of the case, examining the patent claim and the

4    trademark.  I think we alluded to in the papers that the mark

5    is for curl formers, and these are curlers that form curls in

6    hair.  So we think that is merely a descriptive trademark that

7    is not valid.  And so Amazon, because it has been sued, is

8    intending to defend the case on the substance.

9            THE COURT:  I understand that.  But I think I'm

10   hearing you say two different things.  One is that, in the

11   first instance, your position is that the company itself by

12   merely providing a platform, is not, and cannot, itself, be

13   liable for infringement of either patent or trademark, because

14   it doesn't take title to the property.  And that's an

15   interesting point.  I will think about that further.  Because I

16   suppose what plaintiffs are saying in response is that you are

17   on notice, at least of the possibility that these are valid

18   patents and, therefore, infringing products being offered

19   through Amazon, and that you have the ability, and I assume in

20   other context, use the ability, to delist certain sellers.

21           So I understand that, but you're saying separately, as

22   a second level of attack, that irrespective of whether your

23   platform can be the basis for an infringement claim, it

24   wouldn't be here, because there is nothing to infringe because

25   the patents are invalid, or the trademark is invalid.

1          MR. CRUZEN:  That is accurate, your Honor.  You have

2   stated that better than I did.

3          THE COURT:  Thank you very much.  I'm not sure I agree

4   you, with but appreciate it nonetheless.

5          Are there instances in which Amazon is, itself,

6   convinced of the infringing nature of a particular product?  I

7   mean, for example, if I were to try and sell my own version of

8   Coca-Cola with the very same label, very same everything, and I

9   did it through you guys, and it was quite obvious that I was

10  selling something I should not, would you delist me in those

11  circumstances?

12         MR. CRUZEN:  As outside counsel in this litigation

13  matter, I'm not sure that I am qualified to speak across the

14  board for Amizon's practices.  I do know that they consider

15  cases on a case-by-case basis.  And there are instances when

16  they have suspended products after receiving notice of

17  allegations of infringement.

18         I hope that answers your question.

19         THE COURT:  It does.  It's the case-by-case things.

20  Because, of course, at this time, it is not appropriate to tell

21  me why they decided not to, here.

22         So let's go back to the initial point that I was

23  making in this section of our discussion, which is would a

24  mediation session be of any use.  And let's just put principles

25  aside for the moment, please, sir.  It will cost you something

1    to litigate this case, to do the motion that you contemplate,

2    to handle discovery; correct?

3          MR. CRUZEN:  That is correct, your Honor.

4          THE COURT:  It might -- I'm just using the word might

5    here.  It might cost you less to settle now, correct?

6          MR. CRUZEN:  In theory, your Honor.  But I will say

7    that Amazon is basing this decision, or at least its opinion

8    that there is no potential likelihood for settlement at this

9    time, based on the actual discussions that have occurred.  I

10   obviously can't reveal those to your Honor.  That decision is

11   not made in a vacuum.  And it reflects Amazon's estimation of

12   whether settlement is likely, based on the actual offers

13   exchanged.

14         THE COURT:  I understand you to be saying that,

15   despite our very thoughtful exchange on this issue, right now

16   mediation would be fruitless.

17         MR. CRUZEN:  That's right, your Honor.

18         And I will note that the second piece of it really is

19   Amazon does object to the notion that it should be compelled to

20   bring a representative to this venue after it has suggested

21   that this venue is not the most convenient for its witnesses.

22         THE COURT:  Fair enough.  I don't think I can stop you

23   from filing a motion to transfer, and I'm not going to do that.

24   I'm not even going to try to talk you out of it, because I

25   understand the parties' arguments.  It is not an obvious win or

1     lose for you, so I'm not going to try and cajole the parties to

2     my particular way of looking at it.

3              Do I understand, from your last comment to me, sir,

4     that you might reconsider the viability or the fruitfulness of

5     such a somewhat procedure, depending on the decision that I

6     make?

7              MR. CRUZEN:  That's possible.  But what I really

8     wanted to reflect, your Honor, is in judging whether a

9     mediation is likely to be fruitful, Amazon has to weigh the

10    costs of actually participating in the mediation.  And that

11    includes flying a representative and litigation counsel from

12    the west coast back to New York, hotels, et cetera.  The time

13    spend during the mediation itself.  And when Amazon really sees

14    no likelihood that a settlement is going to result from the

15    mediation, that cost weighs in favor of suggesting that we

16    postpone mediation until some of the merits in the case are

17    decided.

18             THE COURT:  Okay.  One of the things that interested

19    me was the sheer length of the dates set forth in the case

20    management plan.  And that is of course because this is a

21    patent case and a trademark case.  And those usually involve

22    more complicated discovery schedules than the run-of-the-mill

23    cases in this district.

24             I am inclined to authorize the dates that are set

25    forth by the parties, but I guess if I'm doing that, I sort of

1   want a few things to be in mind.  One is that I will be doing

2   that as we're doing your motion in this case.  I mean I will

3   certainly try to address that as quickly as I can.  I had two

4   ways of doing this.  I could either do your motion and then

5   discuss the case management plan, if need be, or just endorse

6   the one that I have and build this into it.  And I think I'm

7   inclined to do the later.

8          Secondly, I know there are some issues regarding

9   certain of the particular dates and the possibility of certain

10  disputes about discovery, including in particular electronic

11  discovery and e-mails in this case.

12         Mr. Cruzen, while you are standing, I'm going to talk

13  to you about that.  The parties were thoughtful enough to amend

14  my case management plan order to sort of reflect the

15  peculiarities of patent litigation.  And it looked to me as

16  though both sides were aware of -- and perhaps basing their

17  dates, in part at least, on the Northern District of California

18  model rules for patent cases, or some equivalent of that.  I

19  know Judge Forrest in this district has adopted those largely

20  wholesale.  And so when we're talking about things like claim

21  construction and things of that nature, we are talking about

22  them as they are.  Were you thinking about the Northern

23  District of California's model rules or someone else's.

24         MR. CRUZEN:  I believe this case was designated as

25  eligible for Southern District of New York local rules, and

1    that's what we try adopt wholesale.  I think there are two

2    modifications to those, and those pertain to the parties'

3    exchange of claim terms in advance of submitting their joint

4    claim construction statement.  So that's the only modification

5    to the Southern District's own rules.

6          THE COURT:  Fair enough.  And ours are based on

7    California.

8          MR. CRUZEN:  Agreed.

9          THE COURT:  So it's all coming back.

10         Let me hear from you, please, on the issue of e-mail

11   discovery and why you think I should employ the federal

12   circuit's model rule.

13         MR. CRUZEN:  I think our position is very

14   straightforward.  And e-mail discovery has a potential of being

15   the most expensive aspect of litigation, in my experience, in

16   patent cases.  It can be really a crushing burden to review

17   millions of e-mails, largely relevant, across multiple

18   custodians.  We really don't think this is the type of case

19   where e-mail discovery is appropriate, at all.  This is not a

20   case where you have competitors where a defendant ripped off a

21   plaintiff's patent and designed a product where there might be

22   evidence of copying or the like.  So we don't think that there

23   is likely to be much relevant e-mail, if at all.

24         Hair Flair took a different view and feels that e-mail

25   discovery is appropriate.  So we suggested, as a compromise,

1   the federal circuit's model order for e-discovery which

2   provides limits on e-discovery.

3           THE COURT:  It provides limits, sir, but do I

4   understand that if limits are exceeded, they can be, so long as

5   the exceeding side pays the cost.

6           MR. CRUZEN:  That's right.  Or at least default

7   position that the Court, who adopts those orders, shall

8   consider cost -- cost --

9           THE COURT:  Shifting.

10          MR. CRUZEN:  Shifting.  That is the word I was after.

11  Thank you, your Honor.

12          Cost shifting, if requests beyond those that are the

13  default under the order are exceeded, so --

14          THE COURT:  I want to understand, Mr. Cruzen, what you

15  have just said.  Let's say, for example, that what it speaks to

16  are five search terms, right.  And let's say that Hair Flair

17  asks for 10 search terms, or let's say 20 search terms, because

18  I think that's beyond even the little give that might be in

19  there.  So are my options to deny it, or make them pay for it,

20  or do I not have the option of denying it.

21          MR. CRUZEN:  I believe you would have the option of

22  denying it, your Honor; yes.

23          THE COURT:  By the same token, you understand that

24  they could, if they wished to, invest their resources in this

25  particular way, they could put in a request for 20 or 30 search

1     terms, if they were willing to pay for it.

2              MR. CRUZEN:  I understand that, your Honor.  And it

3     may be onerous to comply with that.  But if that's the approach

4     they were wanting to take, and they were willing to pay for it,

5     which I suppose would be surprising, then that's the order that

6     we would live with.

7              THE COURT:  All right.  One moment, just in case I

8     have anything else to ask you in this round.

9              No, I don't think so.

10             Let me talk to Mr. Griem for a little bit.

11             MR. CRUZEN:  Thank you, your Honor.

12             THE COURT:  Okay, Mr. Griem, why don't we switch to

13    the case management plan.  And as I mentioned to Mr. Cruzen, I

14    am one of those judges who believes that, especially early on

15    in the case, I don't have -- I should not stop parties from

16    filing motions.  I might tell them I can deny them quickly, I

17    might tell them it may not be to their benefit and just a waste

18    of money.  But, here, I think it actually is quite an

19    interesting issue.  And so I am willing to authorize it.  And I

20    know there was a schedule, I believe, set forth by the parties,

21    and we can do that.

22             Does the parties' submission to me have a proposed

23    schedule for the motion?

24             MR. GRIEM:  I don't think so.

25             THE COURT:  Okay, then I'll find an appropriate one

 1    and let you know what that is.

 2                  MR. GRIEM:  Okay.

 3                  THE COURT:  But let's talk, then, sir, about the

 4    remainder of it.  Let me understand your position with respect

 5    to e-mail, and why you believe the federal circuit rule is

 6    inappropriate, and if there is, if you will, a compromise

 7    between your current point and what's stated in the federal

 8    circuit model rule.

 9                  MR. GRIEM:  Sure.  Well, we believe the federal

10    circuit model rule is inappropriate for this case.  It was

11    designed to limit discovery in large competitor-on-competitor

12    patent infringement actions by using the technique of requiring

13    e-mail discovery to be directed to a particular person.  So you

14    have to search that person's e-mail with these search terms.

15    But that's not this case.

16                  This case, we don't care who does what at Amazon.  And

17    it may have been a half dozen people.  We want certain files

18    from Amazon about certain of their functions and operations as

19    they directly relate to this case.  And so it's not a good fit

20    for this case, the federal circuit order.  We're confident that

21    the parties are required to consult with each other, under the

22    local rules and the federal rules, about discovery issues.  We

23    can craft appropriate requests to get the information that we

24    need about the volume of shipments that were made, the

25    interactions that Amazon has with these companies, what work

1   Amazon does to actually store the goods in their warehouse when

2   they act as a fulfillment agent.  It has nothing do with

3   individual Amazon people.  So that's why we object to this

4   order.

5          THE COURT:  I guess what concerns me, sir -- and this

6   may also reflect my ignorance of the specifics of Amazon's

7   e-mail system -- is I don't know if you're going to submit a

8   request saying all e-mails that contain the phrase Hair Flair.

9   All e-mails that -- or one of the purported infringers.

10  Because that is certainly something you could do, but what we

11  are talking about at that point, I think, is there may be

12  multiple e-mail servers.  I don't know the specifics of their

13  e-mail system, so I can't say it is centralized.  So that may

14  be an onerous task to go to any number of servers to find this.

15         But are you saying that you, in your requests, can

16  limit them in such a way that there are only certain people

17  whose e-mails would need to be reviewed?

18         MR. GRIEM:  That may be possible, once I get initial

19  disclosures about people with knowledge, and once I have a

20  modicum of information about how things work inside Amazon.  I

21  don't have that now.  As I sit here now, my assumption about

22  how Amazon works, is it is not so much about people, it is

23  about departments who were responsible for things.  And I'm

24  perfectly happy to narrowly craft our discovery responses to

25  focus on the departments most likely to have responsive or

1    relevant information.

2           So if you are inclined to attempt further limits on

3    e-mail discovery, I would urge you to postpone this issue and

4    refer to the magistrate to consider --

5           THE COURT:  I'm sorry, I am not sure what you mean by

6    referring to the magistrate, because I handle my own discovery.

7           MR. GRIEM:  Anyway, I would urge you to postpone this

8    decision about blocking in the federal circuit order until the

9    parties have had a chance to share some more information about

10   how their systems work, before deciding that this is the right

11   set.  Because this is an order for big cases.  And this is a

12   little case, at least with respect to the amount of substantive

13   discovery by the patent issues.

14          THE COURT:  I hear you.  I guess why I'm thinking it

15   is a bigger case, is because your defendant seems to be a

16   larger company that may have information in all sorts of

17   places.  But I do understand what you are saying.

18          Is there anything else you want to add to our

19   discussion about the discovery?

20          MR. GRIEM:  Not the discovery.  I would like a chance

21   to address your Honor on the issue of whether to order

22   mediation.

23          THE COURT:  Sort of like your reply on that.

24          MR. GRIEM:  Sort of like a reply.

25          THE COURT:  I will take your reply on that.  And I'll

1     hear from Mr. Cruzen about anything he wants to talk to me

2     about e-mail in this case, that he is in agreement with you at

3     this time that that issue should be deferred until you have had

4     your first fight about the scope of e-mail production.

5            So why don't we talk about mediation.  Go ahead,

6     please, sir.

7            MR. GRIEM:  We would not be here if Amazon had

8     responded to the very detailed, very complete letter that we

9     sent them in April.  We made multiple attempts to follow up

10    with Amazon's Legal Department.  And I do not think that it is

11    inequitable or unfair to order Amazon to spend a few thousand

12    dollars and to inconvenience an executive for a few days to

13    come to New York to attempt, in a nonbinding mediation, to get

14    this over with.  Every day that this hapit goes on, my client

15    is losing thousands of dollars in sales.  Amazon is the major

16    problem.  And without their platform, these manufacturers in

17    China would not be in the U.S.  Every other Amazon entity in

18    Germany and France, and the UK voluntarily cooperated and is

19    actively taking steps to keep these infringing goods off.  So

20    they are all coming to Amazon.com.  It is enormously

21    frustrating for my client to be forced to go to federal court,

22    hire us, spend the money.  And I agree that people come to

23    mediation thinking it is never going to work.  In my

24    experience, mediation almost always works.  Because you get the

25    Court officer speaking directly at clients about risks.  You

```
 1    get the Court officer speaking directly to the lawyers about

 2    risks.  You get people focusing on the issue, rather than

 3    having it be one of a hundred things that cross the desk of a

 4    busy in-house counsel.  And if your Honor's inclined to help us

 5    do some justice here, I will --

 6              THE COURT:  Hang on a second, I'm sorry, I have to

 7    stop you there, sir, because you were doing fine until that

 8    last argument.  Because what you are suggesting, if I don't

 9    order it this time, I'm somehow hindering justice, which

10    certainly you don't mean.

11              MR. GRIEM:  That is not what I meant.

12              THE COURT:  Rephrase that, sir.

13              Ms. Auslander will give you something to say.

14              MR. GRIEM:  I'm sorry, your Honor.

15              To go through the process faster, and give the parties

16    an honest chance to do this early.  Christmas is coming.  It is

17    a huge sales season.  Because of the delays we have encountered

18    so far, my client risks losing a tremendous amount of sales

19    through that season.

20              So what we're asking is that the Court help to at

21    least give the parties a chance, even if they don't think

22    sitting at their desk in Seattle, that it is worth coming to

23    New York to try to get this done now.

24              THE COURT:  I understand the arguments.  Okay, thank

25    you.
```

1              MR. GRIEM:  Thank you.

2              THE COURT:  All right, Mr. Cruzen, you get the last

3    word on the electronic discovery, the e-mail, and whether you

4    think that you could have discussions with Mr. Griem and

5    obviate the need for me entering the order.

6              MR. CRUZEN:  Thank you, your Honor.

7              And I stand by my prior position on mediation.  If you

8    have any further questions, I'm happy to address them, but

9    otherwise I'll deal with the e-mail issue.

10             What I think I heard Mr. Griem saying was he is really

11   interested in companywide policies at Amazon, how it handles

12   products in its warehouse, things like that.

13             THE COURT:  Hardly seem like e-mail worthy at all.

14             MR. CRUZEN:  Correct.  And we're not refusing to

15   produce that information in response to normal RFPs.

16             What I object to is running search terms across

17   multiple custodians that generate millions of e-mails because

18   they have some tangential relevancy to a search term.  That is

19   not what he is asking for.  So if he is interested in policies

20   that he thinks are relevant to this case, we will produce those

21   policies as a part of normal discovery.  But that doesn't

22   address the burden of conducting e-mail discovery.  So I think

23   that we're ships passing in the night a little bit.

24             THE COURT:  Perhaps.  I thought what I was hearing him

25   say is a little different, which is rather than give you

1    obviously overbroad requests that will obviously implicate

2    every e-mail recipient at the Amazon organization, that perhaps

3    the two of you, or perhaps, he, in the first instance and then

4    working with you, can craft requests for e-mails so that it is

5    obvious they are going to a select number of people.  So that

6    basically you're implementing the spirit of the model rule

7    without dealing with the model rule, itself.  Where he can talk

8    to you and say I would like e-mails about this particular

9    topic, can you help me figure out who would be the people who

10   would have them, something along those lines.  And if that's

11   the case, that to me seems like you are, together,

12   collaborating in a way that obviates the need for me to put an

13   order of this type, or something broader than this type.

14   That's what we are saying.

15          MR. CRUZEN:  My understanding of the model order is

16   that that is exactly how it works.  The plaintiff -- we produce

17   initial discovery.  They identify custodians they are

18   interested in.  Together, the parties craft search terms.

19   Those search terms are run.  And everything is just defined.

20   The procedural aspects are defined.  You are limited to five

21   custodians, five search terms per custodian.  And so I guess

22   I'm having a hard time understanding what he is anticipating we

23   end up with through collaboration that we wouldn't have under

24   the model order.

25          And I'm happy to work with him.  I just worry that we

1    are just kicking the can down the road if we're going to have a

2    dispute and be back before you, your Honor.  And I sincerely

3    hope that does not happen on this issue.  But the model order

4    will give us a framework within which we can work.  And it's an

5    order that works for large, complicated cases.  I'm not sure

6    why this, being a smaller case, suggests that they should be

7    entitled to more e-mail discovery of a company like Amazon.

8    That just doesn't follow to me.  To me, it seems like something

9    less than the model order is appropriate, and we propose that

10   as a compromise.  Again, we don't even think that e-mail is

11   appropriate in the case at all.

12           So that's our position, your Honor.

13           THE COURT:  So that's a long way of saying, no, we

14   shouldn't defer this.

15           That's fine.  I just want your answer, sir.  That is

16   really all I'm interested in.

17           MR. CRUZEN:  Okay, your Honor, yes.

18           THE COURT:  No, no, all right, I understand.

19           Let me look at my notes again to make sure I have

20   addressed things that I meant to address with the parties in

21   this proceeding.  And I believe I have.

22           What I will do is I'm going to docket some version of

23   the case management plan that the parties have submitted to me.

24   But I do want to add a couple of things to it.

25           Mr. Cruzen, you want your motion, you will get your

```
 1   motion.  But to my mind -- and parties are welcome to disagree
 2   with me -- a motion to transfer based on convenience and
 3   consideration of the factors regarding where documents are and
 4   where witnesses are, is something that is substantially less
 5   complicated than a summary judgment motion or motion to
 6   dismiss.  And, for this reason, I am setting a rather short
 7   schedule for it.  Because I just don't think it takes that
 8   long.
 9            What does that mean.  That means if you want to do
10   this by letter motions, by just letters to me rather than
11   formal motion papers, fine.  I just want to get everybody's
12   arguments, and then make a decision.
13            So, Mr. Cruzen, I'm going to ask for your papers by
14   November 13th.
15            I'm going to ask for the plaintiff's opposition by
16   November 26th.  And, yes, it's the day before Thanksgiving, but
17   I just don't think it is going to take that long to respond to,
18   because your arguments are already given to me.
19            And then the reply on December 3.
20            And my expectation is that I'll probably do this in an
21   oral decision, because I don't want the parties to worry or to
22   conduct discovery or not conduct discovery in the shadow of
23   wondering what I'm going to do.  So if there is an oral
24   decision recognizing where folks are, Mr. Cruzen, I might let
25   you appear by phone this time.  I want you for the first
```

1 conference.  After that, we'll see.

2     On the issue of the e-mail order, I will think about

3 it.

4     On the issue of the early mediation, I am not going to

5 order early mediation.  I'm going to think about including

6 something in the case management plan that Mr. Cruzen can show

7 to his clients and, preferably, show to clients who actually

8 have some say in the resolution of this matter.  Because I'm

9 not disagreeing with Mr. Griem that there is an awful lot of

10 money that is going to be spent that might not have to.  And if

11 the issue is one of needing to hear some Court say that, I'm

12 just as capable of saying that in my order as dragging the

13 parties in.  I am not convinced -- I don't believe -- I'm not

14 convinced that Amazon's conduct before the litigation, whatever

15 it is, even accepting it as Mr. Griem tells it to me, requires

16 me have to them in.

17     I mean do I think they should settle now, rather than

18 later, of course I do.  Certainly before a markman hearing.

19 There is an awful lot of money that gets spent on those things.

20     I am also aware, from my own experience, of how

21 parties who don't want to settle, if one party doesn't want to

22 settle, it won't.  Even yelling at them.  Even trying to reason

23 with them.  So I don't want to waste the magistrate judge's

24 time trying to convince a party of something that they have not

25 yet come to.

1          Let me ask the parties to do this.  I'm going to ask

2     the parties, please, to get a copy of the transcript of this

3     proceeding, to share that cost.  It need not be expedited, but

4     it need be, because I would like to have it as I'm considering

5     the motion to transfer.  And I'll also just have it around so

6     that I can remember what we have talked about in this

7     conference.

8          Short of that, Mr. Griem is there anything that you

9     would like to bring to my attention?

10          MR. GRIEM:  Check my notes, your Honor.

11          THE COURT:  Okay.  And I can hear from Mrs. Auslander,

12     as well.

13          MR. GRIEM:  Well, I guess the only thing I would add,

14     then, is, as I have said, we're being damaged every day.  And

15     you know we have made diligent efforts to try to resolve this

16     before coming here.  We made the decision not to file a motion

17     for preliminary injunction and temporary restraining order with

18     our complaint.  In the absence of some promise of very quick

19     relief, we may have to do that.

20          So, that's not a promise or a threat, it is just

21     something that I think the Court should keep in mind, because

22     we have documented the losses we are suffering and would like

23     to get this resolved as quickly as possible.

24          THE COURT:  Okay, thank you.

25          And, Mr. Cruzen, is there anything else you want to

1    bring to my attention?

2              MR. CRUZEN:  No, your Honor, thank you very much.

3              THE COURT:  Okay.  I thank the parties very much for

4    coming in this afternoon, and for being prepared to talk about

5    this case in such length and depth, so thank you.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25